

DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In Re: | * | |
| Todd M. Garrett | * | Case No.　04-34127 |
| | * | Chapter　7 |
| | * | |
| Debtor(s) | * | |
| ************************************* | * | |
| Ronald Brophy | * | |
| | * | |
| | * | |
| Plaintiff/Movant(s) | * | |
| vs. | * | Adversary　No. 05-1037 |
| Todd M. Garrett | * | |
| | * | |
| | * | |
| Defendant/Respondent(s) | * | |

## MEMORANDUM OF DECISION

Background

　　Plaintiff filed a complaint initiating an adversary proceeding objecting to discharge pursuant to 11 U.S.C. § 727(a) and seeking a determination regarding the dischargeability of debt pursuant to 11 U.S.C. §523(a)[1] . At trial on December 1, 2005, Plaintiff pursued only his claim of non-dischargeability of debt "for fraud or defalcation while acting in a fiduciary capacity" under Section

---

[1] Hereafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code, unless otherwise noted.

523(a)(4).

According to the evidence adduced at trial, Plaintiff Ronald Brophy and Defendant-Debtor Todd Garrett were equal partners in Perfect Circle Tapping, a general partnership formed to provide water main tapping services. The Maryland Revised Uniform Partnership Act (hereafter "RUPA")[2] governed this general partnership, as there is no credible evidence of any expressed partnership agreement. Regarding the defalcation, Plaintiff testified that Defendant changed the partnership's bank statement mailing address and later moved the partnership's bank account to another bank. Plaintiff stated that he subsequently discovered that Defendant had diverted partnership funds, totaling approximately $28,000, without authorization, for his personal use, including for food, liquor store purchases, credit card charges, transfers to family members, loans for a boat and jeep, and for work performed on his personal vehicle, a Corvette.

Defendant, during his testimony, countered that he incurred meal and entertainment expenses in the course of business two to three times per week and that he gave liquor as business gifts. Further, Defendant stated that, due to the precarious financial footing of the business, he was required to purchase materials and gas with his personal funds, later seeking reimbursement from the partnership's account. To secure additional necessary funding for the business, Defendant stated that his mother and father loaned $25,000 and his grandmother loaned $10,000 to the partnership, under an agreement that he would pay it back when he could[3]. Defendant testified that while no promissory notes were signed, these funds were deposited into the partnership's bank account. Thus, Defendant avowed he used partnership funds, paying for meals, liquor, entertainment, and reimbursement for his personal credit card charges for fuel and equipment, to cover legitimate business expenses. Further, Defendant stated that any transfers of partnership

---

[2] Md. Code Ann. Corps. & Ass'ns, § 9A-101 *et seq.*

[3] Defendant noted that he took it upon himself to make the family loans. Plaintiff disputes Defendant's characterization of these infusions of funds as loans to the partnership, averring that any transfers from Defendant's family members were not obligations of the partnership.

funds to his father, mother, and grandmother were for the legitimate purpose of repaying loans his family made to the partnership to keep the business afloat[4].

Applicable Standards

For a trust relationship to satisfy the fiduciary capacity requirement of Section 523(a)(4), the trust on which it is based must be a technical trust in existence at the time of the defalcation. In re Marino, 115 B.R. 863, 868 (Bankr.D.Md. 1990). To determine whether a trust relationship exists and the nature of such relationship, it is necessary to look to the relevant state law, which in this proceeding is the Maryland RUPA. Id.

Although not all trust duties under state law are sufficient to create the necessary fiduciary relationship under the federal standard for the defalcation provision, this Court has held previously that the statutory fiduciary duties of partners in a general partnership, codified in RUPA § 9A-404, create a trust duty upon a partner that is expressed and exists before any wrongful act. In re Hildebrand, 230 B.R. 72, 77 (Bankr.D.Md. 1999). Thus, the duty of accountability required of a partner, as enunciated in the Maryland Code, is a fiduciary duty for purposes of the application of Section 523(a)(4). Id.

As stated by the Court of Appeals of Maryland, the partnership relationship is of a fiduciary character which carries with it the requirement of utmost good faith and loyalty and the obligation that each member will make full disclosure of all known information significant and material to affairs or property of the partnership. Id. at 76, citing to Herring v. Offutt, 266 Md. 593, 597, 295 A.2d 876, 879 (1972). RUPA § 9A-404(b)(1) states that a partner's duty of loyalty to the partnership requires the partner to account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct of the partnership business or derived from a

---

[4] On cross-examination, Defendant stated that the business, headquartered in the home of his parents, did not pay rent to Defendant's parents. Defendant explained that a check made out to his father as rent was in fact for re-payment of asserted loans to the partnership. Defendant's father, James Garrett, testified that he allowed the use of his property and electric service for the business, provided $15,000 to pay for a partnership truck, and made draws on his 401(k) for the partnership.

use by the partner of partnership property. In tandem, a partner may use or possess partnership property only on behalf of the partnership. RUPA § 9A-401(g). Courts have held that when a partner withdraws, diverts, or converts partnership property or funds for his own personal use, the partner has violated his fiduciary duty to the partnership and committed a defalcation that is non-dischargeable under Section 523(a)(4)[5]. In re Bobofchak, 101 B.R. 465, 468 (Bankr.E.D.Va. 1989). See also Att'y Grievance Comm'n of Maryland v. Spery, 810 A.2d 487, 371 Md. 560 (2002).

Conclusion

Although scant evidence was introduced at trial, the Court finds that the preponderance of the evidence supports a finding that Defendant diverted at least some funds for non-partnership purposes. On cross-examination, Defendant acknowledged drawing checks on the partnership bank account to pay for work performed on his personal vehicle, a Corvette. However, the Court is unable to make a determination regarding any funds used to pay back money placed into the cash-starved partnership by members of Defendant's family, as no documentary evidence was introduced. It is unclear whether these purported "loans" were in fact loans to the partnership, investments in the partnership, or loans to Defendant individually.

The Court holds that payments of partnership funds for Debtor's car were improper diversions constituting defalcation. Any additional money that was diverted improperly from partnership funds would also constitute defalcation. However, a debt arises to Plaintiff only to the extent that such improper use of funds harmed Plaintiff personally. Plaintiff only held an equity interest in the partnership and would not have been entitled to any distribution, unless all legitimate debts owed by the partnership were satisfied. See RUPA § 9A-807. If the funds transferred into the partnership by Defendant and or the Defendant's family were investments, payments to those

---

[5] Defendant asserted that the partnership was never profitable, apparently arguing that Plaintiff must prove that profits were diverted in order to prevail. The Court noted that even if the business was unprofitable on a tax basis diversion of funds could still form the basis for a claim of defalcation by a fiduciary under Section 523(a)(4).

investors would appear to be to the detriment of Plaintiff. If the transfers to the partnership were in fact loans, repayment of those partnership debts would not appear to damage Plaintiff, as such debts were entitled to priority of payment over any distribution to Plaintiff.

Plaintiff did not seek a money judgment from this Court. Therefore it is not necessary for this Court to determine the precise amount of monetary damage that Plaintiff has suffered as a result of Defendant's improper use of partnership funds. Because the evidence introduced was sufficient to cause this Court to find that defalcation did occur, this Court holds that all amounts (if any) that a non-bankruptcy court of competent jurisdiction may award as a money judgment to Plaintiff individually and against Defendant individually only, as damages solely caused by the improper use of partnership funds by Defendant, shall be a non-dischargeable debt pursuant to 11 U.S.C. §523(a)(4).

An Order conforming to this Memorandum of Decision will be entered.

cc:   All Parties
      All Counsel

**End of Order**